UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ZIMMERI CONTRERAZ, individually,

Plaintiff,

v.

CITY OF TACOMA, a municipal corporation; SOUTH SOUND 911, an interlocal agreement agency; CHRISTOPHER BAIN, in his individual capacity,

Defendants.

CASE NO. 3:22-cv-5106

ORDER ON DEFENDANTS' MOTIONS FOR PROTECTIVE ORDERS

This matter comes before the Court on Defendants City of Tacoma and Christopher Bain's ("Defendants") motions for protective orders. Dkt. Nos. 47, 52. In their first motion, Defendants seek a protective order and *in camera review* for materials they produced to Plaintiff, they now claim, inadvertently; they argue the attorney-client privilege and work-product doctrine shield the materials from discovery. Dkt. No. 47. In their second motion, Defendants seek a protective order

blocking Plaintiff from deposing Tacoma Mayor Victoria Woodards and Tacoma Police Chief Avery Moore. Dkt. No. 52.

## BACKGROUND

### I. Plaintiff Sued Defendants following an encounter with Tacoma Police.

In February 2022, Plaintiff Zimmeri Contreraz filed a lawsuit against South Sound 911, City of Tacoma, and Christopher Bain, stemming from his encounter with Tacoma Police officers two years earlier. Dkt. No. 1. Specifically, defendant Bain and other Tacoma officers approached Plaintiff in Tacoma's Wright Park following a call that two armed men—one white, one black—threatened a person in the park. The officers handcuffed Plaintiff and questioned him in response to the call. Plaintiff alleges that Bain then, unprovoked and without justification, "violently slammed Plaintiff down" onto a picnic table. The officers eventually released him, but Plaintiff alleges Bain caused him injury. Plaintiff sued Bain for the unconstitutional use of force and battery; City of Tacoma for negligence and violating Washington's Law Against Discrimination, RCW 46.90; and City of Tacoma and South Sound 911 for violating Washington's Public Records Act (PRA), RCW 42.56. Plaintiff seeks special and general damages for Defendants' alleged conduct.

### II. Defendants produce many documents during discovery, including the disputed documents, and Plaintiff seeks depositions of the Mayor and Police Chief.

In response to Plaintiff's discovery requests, Defendants produced a "significant," "voluminous" number of documents, exceeding "well over a thousand pages." Dkt. No. 48 ¶ 5; Dkt. No. 61 ¶ 2. Defendants "endeavored to identify and redact any documents that were privileged before producing the documents." Dkt. No. 48 ¶ 7. Defendants produced "redacted emails between the Legal Department staff and [Tacoma Police Department] personnel related to the litigation and the claim for damages field by the plaintiff as a precursor to the litigation, and

the [sic] produced a corresponding privilege log." *Id.* ¶ 7. Defendants also produced redacted emails between the Tacoma City Attorney's Office and the Tacoma Police Department's Internal Affairs from April 2021, bearing Bates Nos. CONTRERAZ 000223-000245. *Id.* ¶ 8.

On October 27, 2022, Plaintiff deposed Tacoma Police Department Sergeant Kevin Jepson. Dkt. No. 58. During the deposition, Plaintiff marked several documents as an exhibit that Defendants had previously produced during discovery; including Bates No. CONTRERAZ 000228-000234. *Id.*, Ex. 1; Dkt. No. 61 ¶ 2. Plaintiff questioned Sgt. Jepson about these documents without any objection from Defendants. *See* Dkt. No. 58 ¶ 3; Dkt. No. 61.

Nearly six months later, on April 16, 2023, Plaintiff sent Defendants an email requesting a discovery conference about a document produced by the City, including an attachment titled "CONTRERAZ 000223-000245 RFP 1 emails from TPD IA_Redacted.pdf." *See* Dkt. No. 48 at 66. Subsumed within the attachment were CONTRERAZ 000228-000235, which are the documents now in dispute (the "Disputed Documents"). The parties convened the next day for a deposition, but Defendants had not reviewed Plaintiff's email and attachment from the prior day. Dkt. No. 48 ¶ 10.

On April 18, 2023, Plaintiff sent Defendants' counsel notices of videotaped depositions for Tacoma Police Chief Avery Moore and Mayor Victoria Woodards. Dkt. No. 48 ¶ 11. The parties emailed back and forth about Plaintiff's proposed depositions, but the Disputed Documents did not come up. *Id.* ¶ 11-12.

It was not until April 20, 2023, that Defendants claimed for the first time that "the City had mistakenly failed to apply the appropriate redactions" to the Disputed Documents. *See* Dkt. No. 48 ¶ 13. Defendants' clawback letter to Plaintiff states, among other things, that the Disputed Documents "should have been redacted and included on the privilege log produced by the City in

its response to Plaintiff's Request for Production No. 1." *Id.*, Ex. 7. Defendants' privilege log provided to Plaintiff does not include the Disputed Documents. *See id.*, Ex. 3.

As for the origin of the Disputed Documents, they stem from Defendant South Sound 911's Computer Aided Dispatch ("CAD") logs, which record dispatch activity and communications between South Sound 911 dispatchers and law enforcement officers. *See* Dkt. No. 50. When Plaintiff submitted his pre-suit claim for damages against the City, the City Attorney's Office requested information about Plaintiff's allegations from various departments in order to evaluate his claim and to render legal advice. Dkt. No. 49 ¶ 2-3. The City Attorney's Office contacted Lt. Still, who worked within the Tacoma Police Department. Dkt. No. 50 ¶ 6. In response, Lt. Still sent the City Attorney information from the CAD logs, a process he described as follows: "I did not download or print the CADs from South Sound 911. I cut and pasted the information on the screen into separate Word documents that I then provided to our attorney at her request during our communications relating to the claim for damages." Dkt. No. 50 ¶ 6. The City Attorney's Office contends that the documents provided by Lt. Still "are reflective of privileged communications and my legal analysis, and are therefore also subject to protection under the attorney work product doctrine." Dkt. No. 49 ¶ 3.

The parties conferred about the Disputed Documents and the deposition notices, but couldn't reach any agreements. *Id.* ¶ 14. These motions followed.

## DISCUSSION

### I. Defendants' motion for protective order for produced documents and request for *in camera* review.

Defendants move for a protective order regarding the Disputed Documents.[1] A district court has broad discretion to control discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," but that "[a] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(b)(1), (c)(1). "The burden is upon the party seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).

#### a. The Disputed Documents are not protected by the attorney-client privilege.

It is settled law in the Ninth Circuit that federal common law on privilege governs federal question cases with pendant state law claims. *Henry A. v. Willden*, 271 F.R.D. 184, 187 (D. Nev. 2010) (citing *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 at n. 10 (9th Cir.1992)). Whether the attorney-client privilege applies to information is discerned from an eight-part test: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). The attorney-client privilege is strictly construed "because it impedes full and

---

[1] Defendants identify the documents at issue as Bates Nos. CONTRERAZ 000229–000235. Dkt. No. 47 at 9.

free discovery of the truth." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citing *United States v. Martin*, 278 F.3d 988, 999 (9th Cir.2002)). The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications. *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992) (citing *In re Grand Jury Subpoenas (Hirsch)*, 803 F.2d 493, 496 (9th Cir.1986), correction printed 817 F.2d 64 (9th Cir.1987)). "To meet this burden, a party must demonstrate that its documents adhere to the essential elements of the attorney-client privilege adopted by this court." *Id*. at 1070-1071 (citing *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977).

Defendants do not carry their burden. To start, Defendants do not claim that the underlying CAD logs and data are privileged—indeed, Defendants note that "the CADs were produced elsewhere to [Plaintiff] in the context of the City's Initial Disclosures and discovery responses …." Dkt. 48 at 92. Likewise, Defendants do not claim that the Disputed Documents contain anything beyond "essentially screenshots" of the non-privileged CAD logs.[2] Dkt. No. 60 at 2; *see also* Dkt. No. 50 ¶ 6. It is perhaps for this reason that Defendants acknowledge the Disputed Documents are not privileged simply because they are attached to an email to an attorney. Dkt. No. 47 at 9 (citing *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999)); *see also Fisher v. United States,* 425 U.S. 391, 403–404 (1976) (holding that a client cannot shield a document from discovery by including it in a request for legal advice).

[2] Defendants add a slight wrinkle to this claim in their reply, stating that the Disputed Documents are "substantially similar but are not identical" to the non-privileged CAD logs. Dkt. No. 60 at 2, n.2. But Defendants offer no support for this statement. In fact, Defendants' moving papers are replete with instances of absent or incorrect citations to the record. The Court will not consider this unsupported claim raised for the first time on reply. Rather, the proper record before the Court reveals Defendants describing the Disputed Documents at various points as "screenshots" and "cut and pasted … information." Dkt. Nos. 48, 50, 60.

Instead, Defendants appear to argue that it was the act of "creating a separate document" and transmitting it to the City Attorney's Office for "[legal] analysis of [Plaintiff's] claim for damages and the anticipated litigation" that transforms the Disputed Documents into a privileged attorney-client communication. *See* Dkt. No. 47 at 10. The privilege, however, "does not shield all information that a client divulges to an attorney, or vice versa, but rather is limited to instances where legal advice is sought or rendered." *Deseret Mgmt. Corp. v. United States*, 76 Fed.Cl. 88, 90 (2007) (internal quotations omitted). In addition, where a given communication contains both privileged and non-privileged information, the party asserting the privilege may bear the burden of "segregat[ing] the privileged information from the non-privileged information." *Ruehle,* 583 F.3d at 609.

Here, the emails between Lt. Still and the City Attorney's office, which Defendants produced in redacted form, are distinguishable from the Disputed Documents, which were an attachment to one of those emails. While the redacted emails arguably contain a request for, or the rendition of, legal advice, the same cannot be said of the Dispute Documents, which are simply copies of publicly available documents that Defendants previously produced to Plaintiff. Indeed, Defendants do not claim the Disputed Documents contain any alterations or other characteristics that could constitute communications as opposed to simply screenshots of otherwise available, factual information. *See Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 541 (D. Nev. 2008) ("Facts communicated to an attorney are not protected by the attorney-client privilege." ) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395–96, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). This defect, among the others listed, is fatal to Defendants' claim that the attorney-client privilege applies.

In sum, the Court finds Defendants have failed to make a prima facie showing that the Disputed Documents are privileged.

**b. The Disputed Documents are not protected work product.**

Federal law, not state law, also applies to work product immunity. *See e.g.*, *Great Am. Surplus Lines Ins. Co. v. Ace Oil Co.*, 120 F.R.D. 533, 538 (E.D. Cal. 1988); *see also Cont'l Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 769 (D. Md. 2008). Fed. R. Civ. P. 26(b)(3) codified the work product doctrine. "The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3). In order for documents to qualify for protection under Rule 23(b)(3), the Ninth Circuit has required that "(1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative." *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (internal quotation marks omitted) (citing *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 780–81 (9th Cir.1989)). "The burden of establishing protection of materials as work product is on the proponent, and it must be specifically raised and demonstrated rather than asserted in a blanket fashion." *Riverkeeper v. U.S. Army Corps of Eng'g*, 38 F. Supp. 3d 1207, 1217 (D. Or. 2014) (citing *Green v. Baca*, 226 F.R.D. 624, 652 (C.D.Cal.2005)).

Neither party argues that South Sound 911's CAD reports are work product. Rather, Defendants contend that the screenshots Lt. Still took of the CAD logs for the City Attorney's Office constitute work product. Dkt. No. 47 at 9. Without addressing its appropriate application here, Defendants cite *Denney v. City of Richland*, 22 Wn. App. 2d 192, 510 P.3d 362, *review denied*, 200 Wn.2d 1010, 518 P.3d 206 (2022) as instructive for work product protection of a dual-purpose document. Dkt. No. 47 at 11. Under federal precedent, "[d]ual purpose documents are deemed prepared because of litigation if 'in light of the nature of the document and the

factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011) (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt.*, 357 F.3d at 907). When applying the "'because of' standard, courts must consider in the totality of the circumstances whether the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.'" *Id.* (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt.*, 357 F.3d at 907).

The Disputed Documents are not protected as work-product. To be sure, Lt. Still may have "created" the documents for the City Attorney's office in a literal sense. *See* Dkt. No. 50. But whether Lt. Still "created" a document "because of" potential litigation which is protected by the work-product privilege is dubious. The information that Lt. Still used to "create" the alleged work product was created by third-party South Sound 911—"essentially screenshots of some of the dispatch communications from another agency's website"—and would have "been created in substantially similar form" by South Sound 911 regardless of any litigation prospects. Dkt. No. 60 at 2; *see Richey*, 632 F.3d at 568. Thus, the Court finds Lt. Still's documents were not created solely for impending litigation.

**c. Even if the Disputed Documents were protected from discovery, Defendants have waived any protection.**

Even assuming for argument's sake the Disputed Documents were protected from disclosure, there is the question of whether Defendants waived any otherwise applicable protections by producing the documents to Plaintiff. A party may waive privilege protections through inadvertent disclosures. Federal Rule of Evidence 502 provides that "the disclosure does not operate as a waiver . . . if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took

reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).” Fed. R. Evid. Rule 502(b). *See also Hanson*, 2013 WL 5674997, at *5 (noting that Ninth Circuit courts have also applied a “totality of the circumstances approach” for the inadvertent disclosure of attorney-client privileged or work-product protected documents).

“Rule 502(b) does not require a producing party to engage generally in a post-production review to determine whether any privileged documents or information have been produced by mistake, but “the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently.” *AdTrader, Inc. v. Google LLC*, 405 F. Supp. 3d 862, 866 (N.D. Cal. 2019). “[A] party must begin taking steps to rectify an inadvertent production after they are put on actual or constructive notice—i.e., when they should know—that they may have produced a privileged communication.” *Xu v. FibroGen, Inc.*, 21-CV-02623-EMC, 2023 WL 3475722, at *3 (N.D. Cal. May 15, 2023) (citations omitted).

Plaintiff used all but one page of the Disputed Documents during a deposition on October 27, 2022. Dkt. No. 61 ¶ 2. Defendants’ attorney attended the deposition, but failed to object to the use of the Disputed Documents or claim that they were privileged. Dkt. No. 61 at 2. On this record, Plaintiffs use of the Disputed Documents during the deposition constitutes actual notice of the alleged inadvertent disclosure. *See id*. Defendants argue their attorney was focused on other aspects of the document during the deposition and that notice should not be imputed to Defendant as a result, but a garden-variety claim of attorney neglect is not a sufficient basis to save Defendants from a finding of notice. *Cf. Gibbs v. Legrand,* 767 F.3d 879, 885 (9th Cir. 2014) (“agency law binds clients, including federal habeas petitioners, to their attorneys’ negligence”) (citing *Maples v. Thomas*, 565 U.S. 266, 282-283 (2012)).

The Ninth Circuit has held work product immunity is waived through disclosure when "such disclosure is made to an adversary in litigation or 'has substantially increased the opportunities for potential adversaries to obtain the information.'" *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020) (quoting 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2024 (3d ed. 2020)). But Defendants contend that their disclosure to Plaintiff was inadvertent. *See* Dkt. No. 47. So the question becomes whether Defendants took prompt, reasonable steps to cure the error once on notice under Fed. R. Evid. 502.

Here, Defendants became aware of the disclosure as early as the October 27, 2022, deposition, but failed to take any action at all to "clawback" any of the Disputed Documents until April 20, 2023—or 175 days later. Courts have found waiver for failure to object to disclosed documents at a deposition and for far shorter delays to raise privilege and work product protection. *See, e.g., Luna Gaming-San Diego, LLC v. Dorsey & Whitney*, LLP, 06CV2804 BTM (WM), 2010 WL 275083, at *5 (S.D. Cal. Jan. 13, 2010) (holding that under federal and state law and Rule 502(b)(3), a disclosing party's failure to object to the use of a disclosed document at a deposition waived the privilege with respect to the document); *Xu*, 2023 WL 3475722, at *4 (distinguishing cases governed by a protective order with established claw back periods and holding that a party's 11 day delay to claw back an inadvertently disclosed privileged document was not prompt); *Murray v. Gemplus Int'l, S.A.,* 217 F.R.D. 362, 366 (E.D. Pa. 2003) (applying Pennsylvania privilege law, finding waiver where defendant took no action for 11 weeks after becoming aware that privileged documents had been disclosed); *Edwards v. Whitaker*, 868 F.Supp. 226, 229 (M.D.Tenn.1994) (finding waiver where disclosing party did not object to use of disclosed documents in deposition); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn, Inc.*, 132 F.R.D. 204, 209 (N.D.Ind.1990) (same).

Defendants had actual notice that all but one of the Disputed Documents were disclosed, but they sat idle for months. Even assuming the Disputed Documents were protected from disclosure, the Court finds that Defendants waived any protections through their unreasonable delay in rectifying their disclosure. *See* Dkt. No. 55 at 11.

**II. Defendants' motion for protective order for the depositions of Mayor Woodards and Chief Avery Moore.**

Next, Defendants move for a protective order preventing Plaintiff from deposing Mayor Woodards and Chief Avery Moore. Dkt. No. 52. Defendants argue the proposed depositions are beyond the scope of permissible discovery because they would not lead to "relevant admissible" information for Plaintiff's claims, are overly burdensome, and are harassment. *See* Dkt. No. 52; Dkt. No. 59 at 3. Defendants contend that Plaintiff has not raised a *Monell* claim, and argue that even if there were one, Chief Moore's testimony regarding ratification under *Monell* would be irrelevant because the policy in-place at the time of the Plaintiff's allegations were changed before Chief Moore's tenure. *See* Dkt. No. 59 at 4-7. Defendants also argue that discovery of information related to Mayor Woodard's statements regarding Tacoma's Resolution 40622 and Chief Moore as to his "ratification' of events related to Plaintiff are irrelevant because Plaintiff does not raise a 1983 claim. *See* Dkt. No. 52 at 9-10. Finally, Defendants argue that the proposed depositions are not "proportional to the issues and needs of the case."[3] Dkt. No. 52 at 11.

Plaintiff contends Mayor Woodards has information about "racist profiling and police brutality" and knowledge that the harms Plaintiff suffered were "a probable occurrence." *See* Dkt. No. 57 at 10. And specifically, Plaintiff argues that "Plaintiff's counsel should be able to

[3] There is at least one other basis on which Defendants could have fought the proposed depositions: whether Mayor Woodards and Chief Moore may be deposed despite the rule that heads of government agencies are not typically subject to depositions outside certain circumstances. *See Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979). Because Defendants do not raise the argument, the Court does not consider it here.

ask City's Mayor whether, in her view, TPD's conduct fell below the standard of care in policing that she set in proclamations and resolutions contemporaneous to the discriminatory and assaultive incident in Wright Park." Dkt. No. 57 at 10. Further, Plaintiff seeks to depose Chief Moore based on his statements regarding racial profiling in Tacoma and related education and to determine whether the City of Tacoma is liable under a *Monell* ratification theory. Dkt. No. 57 at 11. Plaintiff also states that while Chief Moore was not the TPD chief at the time of Plaintiff's allegations, "his expectation for his officers is relevant to the standard of care in the case" and "Plaintiff should be allowed to ask the Chief if the actions of the officers on July 12, 2020 fell below his expectations and the police standards as the Chief of Police." Dkt. No. 57 at 12.

The scope of allowable discovery in this matter is neither as narrow as Defendants argue nor as wide as Plaintiff would like. As an initial matter, neither party grapples with the Rule 26 standard as it was amended in 2015 to emphasize that all discovery requests must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see* LCR 26(f) ("The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in every case when parties … promulgate discovery requests."). The Rule lists several factors to consider in weighing proportionality, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

As informed by the record and the vast body of law holding that "heads of government agencies are not normally subject to deposition," the Court finds that Plaintiff has failed to show the deposition of Mayor Woodards and Chief Moore are necessary or proportionate to the needs of this case. *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) (internal quotations and citation omitted). First, Plaintiff does not bring a 1983 municipality claim against Defendant City

of Tacoma, so "ratification" evidence is neither relevant nor necessary for Plaintiff to prove his case. Second, Plaintiff does not contend that Mayor Woodards or Chief Moore have first-hand information that cannot reasonably be obtained from other witnesses or through other discovery devices. Finally, high ranking officials like Mayor Woodards and Chief Moore are presumed to have "greater duties and time constraints than other witnesses and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Bogan v. City of Bos.*, 489 F.3d 417, 423 (1st Cir. 2007). Thus, deposing them for the related, but somewhat attenuated, purposes stated by Plaintiff would create a greater burden on city operations than any likely benefit. The Court's ruling, however, does not prevent Plaintiff from using other discovery devices to learn about information they possess.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for a Protective Order regarding the Disputed Documents is DENIED (Dkt. No. 47); and Defendants' Motion for Protective Order regarding the proposed depositions of Mayor Woodards and Chief Avery is GRANTED.

It is so ORDERED.

Dated this 26th day of June, 2023.

Jamal N. Whitehead
United States District Judge