THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ZIMMERI CONTRERAZ, individually,

Plaintiff,

vs.

CITY OF TACOMA, a municipal corporation; SOUTH SOUND 911, an Interlocal agreement agency; and CHRISTOPER BAIN, in his individual capacity,

Defendants.

No. 3:22-cv-05106-JNW

**PLAINTIFF'S RESPONSES TO DEFENDANTS' DISPUTED MOTIONS *IN LIMINE***

HEARING DATE: MARCH 15, 2024

ORAL ARGUMENT REQUESTED

COMES NOW the plaintiff, Zimmeri Contreraz, in the above-entitled matter, by and through his counsel of record, Loren A. Cochran, Nicholas "Cole" B. Douglas and Tiffany L. Wilke and Cochran Douglas, PLLC, and submits these Plaintiff's Responses in Opposition to Defendants' Motions *in Limine*.

## I. MOTION *IN LIMINE* RESPONSES

Plaintiff responds to the defendants' disputed motions as follows:

**4. No evidence of other alleged acts / lawsuits involving allegations of tortious or other misconduct by the City, Tacoma Police Department ("TPD"), or any Tacoma Police Department ("TPD") officers, including Officer Christopher Bain not related to the events of July 12, 2020.**

Defendants' motion *in limine* seeking to preclude any mention of other actions against





Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

the City, TPD, other TPD officers and Christopher Bain should be denied. Defendants fail to specify what acts or lawsuits should be precluded from admission at trial. Also, Plaintiff has state law claims of negligence and discrimination for which notice evidence is entirely proper and necessary.

First, Defendants general assertion that Plaintiff should be precluded from referring to unrelated litigation or disciplinary history involving any TPD officers is too amorphous to specifically address. Defendants have not referred to any specifics for which Plaintiff can formulate a response. To the extent Defendants (1) have failed to specify what evidence they seek to exclude, (2) have failed to apply the law to the evidence they have identified, or (3) have prematurely asked the Court to issue rulings that cannot be made until trial (such whether certain evidence is relevant or too prejudicial), Plaintiff request the Court deny the motion or reserve ruling until trial. *Fenimore Construction Co. v. Drake*, 87 Wn.2d 85, 549 P.2d 483 (1976).

To the extent that defendants seek to exclude Defendant Bain's prior allegations of excessive force, presumably, they are referencing *Emmett v. City of Tacoma*, 691 Fed. Appx. 475, 476 (9th Cir. 2017). The Ninth Circuit found that a jury could find Bain and his partner at the time, Daniel Nettleton, used unconstitutionally excessive force against a schizophrenic person by deploying a "dart taser." However, Bain and Nettles indeed were granted summary judgment dismissal, but only on the question of qualified immunity. *Id.*

If *Emmett* is in fact the case the defendants are referring to in their motion *in limine*, evidence of Emmett and other cases, as well as the disciplinary history of TPD officers, including Officer Bain, may be introduced for other purposes, outside attempts merely to prove bad character. Plaintiff should be allowed to address such evidence. Other excessive force or disciplinary actions may be introduced to prove notice, motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake, all of which may support Plaintiff's state law claims. Without engaging in hypotheticals, to the extent that relevant information to this case






2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

comes out at trial which is not introduced solely as character evidence, the plaintiff should not be precluded from exploring that information through this motion *in limine*.

Finally, Plaintiff anticipates that *voir dire* may include questions and/or responses from potential jurors about incidents of excessive force or alleged excessive force. The Manuel Ellis case, the Than Orn case and the verdict involving TPD Officer Jared Williams while on an extra-duty assignment at the Tacoma Mall are three cases that will likely be brought up in jury selection. Plaintiff reserves the right to reference those cases should the situation arise.

**5. No reference to the cause of death of former TPD Officer Joel Cheney, Officer Cheney's resignation, and or any reference suggesting, or tending to suggest that former Officer Erik Levitt resigned from TPD for any reasons associated with this incident.**

Defendants are correct that former TPD officer Joel Cheney was an integral player in the July 12, 2020 incident at issue. For more than two years, Defendants claimed that Cheney was the first officer who contacted Plaintiff Zimmeri Contreraz. Defendants claimed that Defendant Bain and his partner, former TPD officer Erik Levitt only responded as supportive backup to Cheney's investigatory stop.

Then, on November 13, 2023, more than three years after the incident, Defendants for the first time produced the Field Investigation Reports (FIR) for Defendant Bain and Levitt. Those FIRs told an entirely different story than ALL of the previously testimony and evidence provided by the City. Bain and Levitt were the first and primary officers who encountered Plaintiff Contreraz at Wright Park.

With regard to Officer Cheney, Defendant cannot credibly say that the tragic death of former TPD officer Joel Cheney was entirely unrelated to the facts of this case. Plaintiff has repeatedly asked TPD witnesses in depositions about Cheney's passing and has requested Cheney's personnel file in discovery. Witness and after witness has answered ambiguously with a general lack of knowledge. Cheney's personal file offers no clearer understanding of what precipitated Cheney's death. What is known is that Plaintiff filed his required tort claim with the City on April 15, 2021; Cheney resigned four weeks later, on May 17, 2021; he



COCHRAN DOUGLAS
Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

withdrew his resignation a week later, on May 24, 2021, and was by his own admission the subject of an Internal Affairs investigation; Cheney formally resigned again in September 2021, while he was "still given the opportunity to do so"; Plaintiff filed his lawsuit in Pierce County Superior Court on February 2, 2022; and, sadly, Joel Cheney apparently died of an overdose on March 4, 2022.

If the Court is inclined to limit the extent of testimony about Cheney's passing, Plaintiff submits that two points are critical for the jury to understand and to prevent any juror confusion: (1) Cheney's death was not in the line of duty as a law enforcement officer; and, (2) Cheney resigned prior to the completion of an Internal Affairs investigation.

**6. No reference to George Floyd, Manuel Ellis, or any other cases discussed in the media, including social media, involving allegations of police misconduct.**

This incident at issue occurred on July 12, 2020, only a month after the killing of George Floyd and while the entire nation was involved in serious introspection regarding law enforcement and its interactions with people of color. Tacoma was not immune from this powerful dialogue. Manuel Ellis, a 33-year-old black man from Tacoma, was killed within city limits during an arrest by TPD and other area law enforcement officers in March 2020. Four Tacoma police officers were placed on paid administrative leave shortly after Ellis's death, but returned to work two weeks later, with the Tacoma police department stating, "there were no known departmental violations."[1]

One month later, TPD Officers targeted Plaintiff Zimmeri Contreraz as a possible suspect of an allegedly violent crime solely because he was a black man in Tacoma's Wright Park.[2] Contreraz's discriminatory complaints were echoed by two unaffiliated witnesses at the scene, both of whom are white.[3] Yet, the City had no record of TPD's action.[4] For more than a year-and-a-half, the City claimed that no records existed which substantiated Contreraz's

[1] Exhibit 1 to the Declaration of Loren A. Cochran ("Cochran Decl.").
[2] Dkt. 1.
[3] *Id.*
[4] *Id.*





account.[5] Then, only after this lawsuit was filed, a Computer Aided Dispatch or "CAD" was disclosed (despite earlier public records' requests), along with evidence of a formal complaint and a call from an outside agency.[6]

On June 30, Mayor Woodards issued Resolution 40622, in which the Mayor and the City Council sought to, "[A]ffirm their dedication and commit to comprehensive and sustained transformation of all of the institutions, systems, policies, practices, and contracts impacted by systemic racism, with initial priority being given to policing in the City of Tacoma…."[7]

And yet the responding supervisor to Plaintiff Contreraz's complaints of TPD officers' discriminatory and violent conduct one month later, on July 12, 2020, Sgt. Kevin Jepson, had little knowledge or understanding in his deposition regarding the Mayor's efforts to end racism in City policing.[8]

The significant events and the effects thus stemming from TPD's racial profiling and excessive force of Plaintiff Contreraz are starkly contrasted by the statements and policy decrees issued by Tacoma Mayor Victoria Woodards. TPD's lack of knowledge regarding its own City's policy decrees and the City of Tacoma's efforts to curtail racial discrimination in policing is directly relevant where the officers subsequently testified to knowing next to nothing about these policy decrees. This evidence further establishes that the City failed to train and supervise their officers and is directly relevant to the negligence claim against Defendants.

Defendants cite to the unreported, and unpersuasive, case of *Macana v. City of Los Angeles*, No. 2:19-cv-3631, 2021 U.S. Dist. LEXIS 40012, 2021 WL 809402. This case did not involve a Washington Law Against Discrimination claim. Plaintiff's claims directly involve Plaintiff's race, and how Plaintiff was treated because of it, particularly in the environment and

---

[5] Ex. 2 to Cochran Decl.
[6] *See* Dkt. 12.
[7] Ex. 3 to Cochran Decl.
[8] Ex. 4 to Cochran Decl. (Sergeant Kevin Jepson, (Pages 68:1 to 69:18)).





2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

time surrounding national and local cases such as George Floyd and Manny Ellis. Defendants' motion *in limine* should be denied.

**7. No statements, arguments or gestures that violate the "Golden Rule" or otherwise seek to appeal to the emotions, passions or prejudices of the jury, including allegations.**

The defense seeks to anticipatorily prevent Plaintiff from employing the "Reptile" theory, a trial strategy Defendants contend is so powerful and so manipulative that jurors are compelled to return a verdict in favor of Plaintiff regardless of the evidence or the law. The defense appears to claim that jurors are so fragile that the presentation of evidence regarding racism will paralyze the jurors with fear and unduly prejudice them to act for the foreseeable interests of their community. Defendants' motion *in limine* must be denied where (1) it is an improper subject for a motion *in limine*, (2) it would infringe upon Plaintiff's constitutional right to fully support and argue his theory of the case, and (3) full compensation is the fundamental cornerstone to enforcing tort law.

Granting Defendants' request would infringe upon Plaintiff's right to present and argue his case. Defendants purport to preclude any evidence or testimony regarding racism on a very broad scale. By doing so, Defendants' motion asks this Court to prevent Plaintiff from proving elements essential to his claims regarding Defendants' violation of the Washington Law Against Discrimination, excessive force, and the City's negligence. Officer Bain, a party to this case, admitted that the only thing matching the second suspect's description to that of Plaintiff within the CAD report is that Plaintiff is a black male. Plaintiff should not be restricted from arguing this exact theme during trial where sufficient evidence exists to support it. Finally, there is nothing forbidden about discussing the reasons tortfeasors are held fully accountable under the law or explaining the reasons why tortfeasors are not entitled to discounts.

**8. No testimony or reference to City Council Resolution No. 40622, or any Council Action Memorandum associated with therewith.**

As was previously briefed in this case (Dkt. 57), the City passed a resolution prior to the July 12, 2020 subject incident at Wright Park acknowledging systemic racism in policing.






2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

Then on June 30, 2020, Tacoma's Mayor and City Council, through City Counsel Resolution No. 40622, directed the City Manager "to assess the current state of systems in place at the Tacoma Police Department in consultation with police reform experts, and give specific attention to how current policies and existing studies, agency composition, hiring, promotions, staffing levels, training, and accountability systems align to create just outcomes and use this assessment as a foundation for the work of comprehensive transformation." Dkt. 57-58. It depositions and discovery, however, TPD officers were completely unaware of the need for reform or any substantive changes in training or accountability, as mandated by the City. This resolution, proposed by the City, is a party admission. As such, it can be used for any purpose. It would be entirely unfair for the City to acknowledge publicly that there is/was an identified problem with racial profiling in its police force and then plead ignorance at trial regarding this very same issue. This argument is at the heart of Plaintiff WLAD and negligence claims. Defendants' motion *in limine* must be denied.

**9. No reference or argument that any officers did something wrong by failing to perform acts that they were not required to do.**

Defendants' motion *in limine* is too general to effectively respond to, and as such, must be denied. Regarding the failure of its officers and commanders to write use of force reports, and specifically the failure of then Patrol Sgt. Kevin Jepson to write a use of force report is highly relevant to the totality of TPDs actions on July 12, 2020, and relevant to the plaintiff's claim of negligence. Plaintiff's police practices expert, Sue Peters, has specifically opined that best practices are to document felony investigations, like the felony investigation that took place following the alleged armed harassment at the basketball courts in Wright Park on the night of the detainment of Plaintiff Contreraz. Peters also opined that as the responding supervisor Jepson should have memorialized his alleged conversation with Defendant Bain regarding the concerns of the plaintiff and the two independent witnesses complaining of Bain's actions. Finally, Peters has opined that according to Tacoma Police Department Policy 3.1, Use of Force, a report "should have been written due to the fact a Tacoma Police Officer used physical






2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

force to: Defendant self or another from an aggressive action by a suspect, per the description of what Officer Bain told Sgt. Jepson." The failure to create these required reports and to properly document the incident go, not only to the negligence claims, but also to the overall credibility of TPD's witnesses.

**10. No testimony or evidence of any alleged deficiencies in the City's policies, practices, training, supervision, and discipline.**

Defendants again seem to ignore the plaintiff's state law claims of racial discrimination under Washington's Law Against Discrimination and negligence in this motion *in limine*. The City is correct that no *Monell* liability has been pursued in this case, but the policies and lack of policies by the City and TPD go directly to proving the totality of the circumstances regarding the negligent and discriminatory actions of its employees, including those responsible for the unlawful targeting of Zimmeri Contreraz on July 12, 2020. The City's policies are also highly relevant to Plaintiff's Public Records Act violation claims. For these reasons, and because no specific policies have been identified by the defendants which they are seeking to exclude, Defendants' motion *in limine* must be denied.

**11. No opinions by Plaintiff's expert Susan Peters that were not disclosed or are contrary to law.**

For expert testimony to be admissible, it must assist the trier of fact. Fed. R. Evid. 702(a). Expert testimony will assist the trier of fact if it concerns matters beyond the understanding of the average layperson. *United States Fid. & Guar. Co. v. Ulbricht*, 576 F. Supp. 3d 850, 857-19 (W.D. Wash. 2021) (expert witnesses may "discuss the industry standards and whether [the insurer's] actions conformed with those standards,"). As the relevant customs standards and norms go beyond the knowledge of the average layperson (see 19 CFR chapter 111 for customs brokers regulations), Susan Peter's testimony will aid the jury to understand the concepts relevant to its ultimate determination.

Experts can also testify to the applicable standards of care. In general, expert testimony is required to establish a standard of care and whether that standard of care has been met. *See*






2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

Fed. R. Evid. 702 (recognizing that expert opinion must "assist the trier of fact to understanding the evidence or to determine a fact in issue"). Ms. Peters may testify to the relevant regulations and policies and can opine as to the established standard of care.

Additionally, an expert may also include factual conclusions and opinions embodying legal conclusions that encroach upon the court's duty to instruct upon the law. *U.S. v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991). The mere fact that Ms. Peters refers to the law while expressing an opinion does not render her opinions inadmissible. "[A] witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir.1988) *see also Hangarter v. Provident Life & Ace. Ins. Co***.,** 373 F.3d 998, 1015-18 (9th Cir. 2004) (noting that mere references to the law or statutes does not lead to exclusion of the report).

In *Hangarter*, the defendant sought exclusion of an expert's testimony, claiming it embraced the ultimate issue and constituted improper legal opinion. In rejecting those arguments, the Ninth Circuit noted, "It is well-established ... that expert testimony concerning an ultimate issue is not per se improper." *Id*. at 1016 (citation omitted); *see also, Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir.2002). Indeed, Fed. R. Evid. 704(a) provides that expert testimony that is "otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Ms. Peters opinions are based on her wealth of experience and will be helpful to the jury in understanding the use of force parameters for law enforcement.

Finally, with regard to Peters' review of the recorded statement of independent witness Seth Smith, experts can rely on inadmissible evidence to support their opinions if experts in the relevant field reasonably rely on such evidence. Fed. R. Evid. 703. Here, independent, eye-witness testimony is precisely the kind of evidence a police practices expert would use in






2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

assessing the use of force for a cooperative individual detained with handcuffs. Defendants' attempts to exclude this evidence should be denied.

**12. Plaintiff's racial trauma expert, Ashley McGirt, should be excluded or limited from offering opinions that were neither disclosed nor any opinions that do meet the standards set forth for experts.**

As defendants admit, Ashley McGirt is a licensed clinical social worker in the State of Washington. She conducted a forensic interview with and examination of Plaintiff Zimmeri Contreraz. She did not make an independent diagnosis of Post Traumatic Stress Disorder (PTSD) of Contreraz, but instead, relied upon previous diagnoses of PTSD as opined in two separate evaluation reports from Susan David, PhD in January 2021, and Jacqueline C. Means, PsyD, in May 2021, from DSHS's Office of Forensic Mental Health Services, both of which were also reviewed and relied upon by Defendants' forensic expert, Elizabeth Ziegler, PhD. While Ziegler chose to discount and disregard the State's doctors' PTSD diagnosis, McGirt accepted the diagnosis as proffered in her evaluation of the plaintiff.

The bulk of the defendants' motion seems to be directed at McGirt's examination of and expertise in the area known as "racial trauma". Defendants are correct that McGirt concedes that racial trauma has not officially been adopted into the DSM-5. While the DSM, with its notoriously lengthy inclusion process, is certainly a reference source, no practitioner would suggest that it is the only source from which a mental health provider can opine. Other, equally reputable sources indeed recognize racial trauma, also known as racism-related stress, including the American Psychological Association, the U.S. Department of Veterans Affairs' National Center for PTSD; the National Child Traumatic Stress Network; and major universities including the University of Georgia and the University of Connecticut. Racism based stressors are not a new concept, and they are certainly not considered "junk science" in the traditional legal sense.

The district court has a "gatekeeping responsibility" to ensure that the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co.*






2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

*Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999); *see also Daubert v. Merrell Dow Pharm*., 509 U.S. 579 (1993). The reliability inquiry "requires that the expert's testimony have a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co*., 526 U.S. at 149. If an expert's opinion is found to be reliable, however, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 592, 596. "Disputes as to the strength of an expert's credentials, faults in his use of a particular methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *Kennedy v. Collagen Corp*., 161 F.3d 1226, 1231 (9th Cir. 1998) (quotation omitted).

Although Defendants argue that McGirt does not appear to meet the federal standards of admissibility, the proper standards under Fed. R. Evid. 702, the rule "contemplates a broad conception of expert qualifications." *Hangarter*, 373 F.3d at 1015. "[A]n expert may be qualified either by 'knowledge, skill, experience, training, or education[,]' [and] Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert." *Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1269-70 (9th Cir. 1994).

In the instant case, Ashley McGirt has the requisite knowledge, skill, experience, training, and education to talk about her research and expertise on racial trauma. She is relying on verifiable findings of other practitioners who have diagnosed the plaintiff with PTSD and related it back to his interactions with the defendants on July 12, 2020. Her testimony will be of assistance to the jury and outside the scope of an average layperson's knowledge. Any challenge to her testimony should go to the weight of her testimony which defendants will no doubt address on cross-examination.

**13. No reference, including any argument of an alleged conspiracy, collusion or cover-up relating to an email Plaintiff purportedly sent to the City.**

A recurring theme put forth by the defendants is that if Plaintiff was really injured by Defendant Bain's excessive use of force or if he truly felt discriminated against, then why didn't






2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

he file a formal complaint? The fact is, Zimmeri Contreraz did file a complaint on August 27, 2020. A written complaint was sent by Contreraz by email, according to the specific instructions of the Tacoma Police Department, to Internal Affairs at their hyperlinked email address as listed on the department's website at the time: TPD-IA@ci.tacoma.wa.us. The City denies having the email, although it cannot say definitively that it never received it. In fact, the City has demanded proof from the plaintiff of the sending of the email complaint, which the plaintiff has provided. Plaintiff's email was sent and received instantaneously by TPD-IA. However, neither IA nor any other unit at TPD has ever done any investigation into the facts and circumstances behind Defendant Bain use of excessive force or TPD's actions. The only city entity that has done anything with regard to the July 12, 2020 Wright Park incident is the City Attorney's office in defense of this lawsuit. That's a provable fact that the plaintiff should be allowed to introduce at trial, including the sending of the email back on August 27, 2020. Any efforts at trial to limit the introduction of the email complaint, as well as the request for any and all other TPD records, should be denied.

**14. No reference to the Washington Crime Victims' Compensation Fund.**

Much like the previous motion *in limine*, any effort by the defendants to limit the introduction of a record documenting Plaintiff's call to Washington State's Crime Victim Compensation Fund, and the subsequent call made to TPD to investigate the circumstances behind the plaintiff's call should be denied. Defendants are making every effort to deny all of the plaintiff's repeated efforts to investigate and document what occurred to him on July 12, 2020 in Tacoma's Wright Park. Defendants request that the Court exclude from introducing in front of the jury all of the following: (1) Any public records act requests (see below); (2) The formal, written complaint made by Plaintiff to TPD's Internal Affairs; (3) The call Plaintiff made to Washington's Crime Victims' Compensation Fund; and now, (4) The follow up call made by the Crime Victims' Compensation Fund to TPD. Limiting any or all of these efforts by Plaintiff to follow up on what occurred to him on July 12, 2020 would only serve to impugn






2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

his credibility and would tend to validate the defendants lack of follow up. The totality of the circumstances and res gestae of this case require a full explanation to the jury that the defendants sought to sidestep accountability by denying the event ever happened.

**15. No reference to the Public Records Act requests made or the claims asserted by Plaintiff under the Public Records Act.**

Defendants cite no authority for the proposition that this Court cannot present issues to the trier of fact, a jury, in this case regarding the plaintiff's Public Records Act (PRA) violations. While perhaps unusual, a jury trial on the PRA is not precluded under the act. This is especially true if there are specific issues that the Court decides must be weighed before a judgment can be rendered. Without specific citation, Defendants' motion *in limine* regarding to referencing the City's PRA violations must be denied.

Even if the Court ultimately decides the PRA claims on summary judgment, the fact that the PRA claims were filed is highly relevant and admissible at trial. But for the PRA requests and the resultant lawsuit, the defendants' actions very likely would have gone unquestioned. The catalyst of the plaintiff's lawsuit was the PRA request and the res gestae of the case demands an explanation of the totality of circumstances. As a result, the defendants' motion should be denied.

**16. No reference to the CAD related to missing juvenile person.**

Defendants are incorrect and entirely without a factual basis in their assertion that the two Computer Assisted Dispatch (CAD) inquiries produced on July 12, 2020 are unrelated and therefore are irrelevant to this action. The events are related and intertwined into what happened to the plaintiff and are therefore highly relevant. As the Court is aware, the defendants have produced two versions of the CAD inquiries: one which has only information from TPD and South Sound 911; the other version includes information from other databases, including the state Department of Licensing abstracts. In the second version of the CAD inquiries, it's apparent that at about 8:34pm, the individual who flagged down the initial Dupont Police Department officer, Kyle Drake, to complain of armed harassment by a white male with a gun



COCHRAN DOUGLAS
Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

and a black male with a knife was identified as Jasiah Rose. TPD Officer Joel Cheney takes over the response. At 9:04pm, Rose reports to Cheney that his 13-year-old brother is also missing. Cheney works with TPD officer Brandon Scheetz attempting to find both the suspects and the missing 13-year-old. By 9:06pm, Joel Cheney locates the missing 13-year-old by phone. This search for both the allegedly missing 13-year-old and the alleged suspects occurs together and the two CAD inquiries are necessarily read together to understand the full picture of what happened the night of July 12, 2020. Because the jury must be able to understand the entire event, Defendants' motion to exclude the second CAD report must be denied.

**17. Statements on Plaintiff's videos regarding racial issues and riots.**

Again, Defendants fail to identify specific evidence or testimony that Defendants wish to preclude. Without identifying specific evidence, Plaintiff cannot meaningfully respond to the specific pieces of evidence Defendants seek to keep out of the presence of the jury.[9] Defendants motion *in limine* should be denied as a result.

Much like Plaintiff's responses to Defendants' motions *in limine* number six and seven, Plaintiff's race and the discrimination he faced as a result are the crux of his claims. His statements in his Facebook videos are his own impressions of the discrimination he faced, which is directly tied to his damages. A lay person can testify to his or her sensory perceptions.[10] Plaintiff also has personal knowledge of all the statements he made in his video, as he himself is a black man, living in America, who just personally experienced racial discrimination by the police. At a minimum, this helps the jury "determine a fact in issue" and is clearly "based on the witness's perception" (i.e., that Plaintiff was discriminated against on the sole basis of his skin color).[11] Defendants' motion must be denied.

**18. Exclude the testimony of any officers who had no contact with Plaintiff.**

[9] *Fenimore Construction Co. v. Drake*, 87 Wn.2d 85, 549 P.2d 483 (1976) (a motion *in limine* must be specific, must apply the law to those specific facts, must involve highly prejudicial evidence, and must establish that the evidence is "clearly inadmissible").
[10] *See Bitzman v. Persi*, 88 Wn.2d 116, 121, 558 P.2d 775 (1977).
[11] *See* FRE 701(a) and (b).






2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

Any attempt to exclude the testimony of other TPD officers who responded to the call of armed harassment at or around Wright Park on July 12, 2020 but did not choose to detain anyone and did not respond to the park bench where the plaintiff was handcuffed should be denied. It is highly relevant that at other areas of the park, including at the basketball court, TPD officers saw "ALOT (sic) OF PEOPLE HERE" according to Officer Jonathan Douglas, and "NEG ON K9, TO (sic) MANY PEOPLE" according to Joel Cheney. Douglas testified that, "It was July, and there was (sic) multiple people playing basketball in the park," yet he neither questioned nor detained anyone. When asked why Officer Douglas chose not to question anyone, despite a lot of people at the basketball courts, Douglas stated:

> **A.** There was a lot of people, and there's more description that would have been necessary to hone in.
>
> **Q.** What do you mean, more description would have been necessary in order to hone in?
>
> **A.** Because we got the vague description at the very beginning of what they were wearing. So as Joel Cheney is at the hospital gathering more from the victim/complainant, he may have been able to get more clothing description, any tattoos, anything that would indicate something further that I can locate one individual instead of the multiple people that were there.[12]

However, Defendant Bain and his partner Erik Levitt found a single black man who, according to their own self-reports, didn't match the description of either of the alleged suspects, and yet Bain and Levitt chose to handcuff and detain him regardless. The observations and decisions of other officers who responded to the initial call are entirely relevant to the reasonableness of the Bain's overall all actions and that of TPD more generally. Defendants' motion *in limine* seeking to exclude the testimony of other responding officers on July 12, 2020 should be denied.

**19. Plaintiff should be precluded from making policy-related arguments.**

This defense motion *in limine* is far too general to be responded to, and thus it is too general for the Court to grant. A blanket limitation on "policy-related arguments" without more

[12]Ex. 5 to Cochran Decl. (Officer Jonathon Douglas, (Page 56:4 to 56:15))






2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

would preclude perfectly reasonable areas of both inquiry and argument. This is especially true when punitive damages are an available remedy against Defendant Bain. Furthermore, *voir dire* will necessarily involve questions about police accountability, racial profiling, positions of power and trust. This will be true for the plaintiff and the defendants alike. Any effort to preclude those "policy" questions would be improper when these issues are at the very heart of the matter.

**20. No argument or suggestion that any of the offices are colluding or covering for each other, or any "thin blue line" type of argument.**

Defendants' motion *in limine* regarding colluding, covering or a "thin blue line" is too general in nature to which a response can be provided. The plaintiff trusts that the Court will properly exercise its role as the gatekeeper of admissible evidence and argument. It would be improper to grant such a general motion *in limine* without a specific factual basis.

**21. Plaintiff should be precluded from personally offering any testimony regarding any medical or psychological diagnoses that he contends were causally related to this incident.**

Defendants' motion should be denied. With respect to lay diagnoses, Rule 701 prohibits a lay witness from offering opinion testimony where the opinion is based on "scientific, technical, or other specialized knowledge."[13] This motion, if granted, would prohibit usual and common communications regarding Plaintiff's own perceptions of his physical and emotional injuries.

Plaintiff and other lay witnesses should be authorized to describe their lay perceptions of Plaintiff's physical and emotional injuries. In the unlikely event the lay descriptions cross over into opinions that are the proper subject of expert testimony, a sustained trial objection by Defendants at that time would provide a sufficient remedy.

Defendants also seek to preclude testimony that they caused Plaintiff's physical and emotional injuries, and that they made his pre-existing conditions even worse. In *Baca v. State*

[13] Washington courts have routinely held that non-experts may testify regarding plaintiff's injuries. *See Bitzman v. Persi*, 88 Wn.2d 116, 121, 558 P.2d 775 (1977).






Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

*of California et al*., Case No. 13-cv-2968-SBA, ECF (N.D. Cal. Jan. 20, 2016), the district court denied a similar motion by the defendants. For the same reasons as in *Baca*, Plaintiff should not be precluded from testifying about the pain and injuries he sustained as a result of Defendants' conduct. If foundation is properly laid, a witness may testify as to any relevant independent knowledge, FRE 401 and FRE 402, and if Plaintiff told a lay witness that his arm was hurting, or that he could not exercise, or that he was in pain, then those statements would be admissible under the rules of evidence. FRE 801; FRE 402; FRE 403. For the foregoing reasons, Defendants' motion should be denied in its entirety.

**22. Plaintiff cannot offer his own opinions that his medical bills were reasonable and no expert has been disclosed on this subject.**

Defendants' motion should be denied in its entirety. Plaintiff can call his treating providers who have been identified through discovery to opine as to the reasonableness and necessity of his treatment and associated charges. Defendants' reliance on the unreported order from *Brown v. Wescott*, C13-369 MJP, 2013 WL 6670252 (W.D. Wash. Dec. 18, 2013) is misguided, as the plaintiff in that case was allowed to use her treating physician to present such evidence at trial. 2013 WL 6670252, at *3. Although the testimony from Plaintiff's named billing expert was excluded, that was due to Plaintiff's failure to disclose the methodology for the billing expert's opinions, but more importantly, because there was no dispute as to the reasonableness of Plaintiff's medical charges, making that expert's opinions completely irrelevant to future proceedings. Defendants' motion *in limine* should be denied.

**23. Plaintiff should be precluded from offering evidence or testimony in support of undisclosed claims and damages.**

Plaintiff opposes this motion because it is extremely vague and inconsistent with Washington law. In Washington, excluding evidence requires the trial court to consider several factors, including whether there is a showing of intentional or tactical nondisclosure, willful violation of a court order, or other unconscionable conduct by the procurer of the testimony. It is unclear what evidence Defendants are specifically targeting with this motion, and without





more, Plaintiff cannot fairly make arguments opposing the exclusion. If there was any nondisclosure, the better approach would be to deal with it on a case-by-case basis, as lesser sanctions could apply. Entering the motion now would serve no purpose other than to unfairly allow Defendants to argue that the court already excluded the evidence in a motion *in limine*, especially when Plaintiff has presented evidence of wage loss stemming from his injuries and it appears that Defendants are requesting that evidence of Plaintiff's wage loss be excluded.

Issuing a blanket motion at this stage prohibiting all undisclosed evidence would be wholly improper. Defendants' motion *in limine* should be denied in its entirety.

**24. Plaintiff cannot seek punitive damages against the City.**

The City of Tacoma's motion is not a proper motion *in limine*, but instead an improperly noted motion for summary judgment on the topic of punitive damages. As a result, it is not properly before the Court and should not be considered.

Regardless, Plaintiff has no intention of arguing that punitive damages should be applied against Defendant City of Tacoma, only against Defendant Christopher Bain, in an individual capacity. As the Court is aware, according to the plain language holding of *Smith v. Wade*, a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct involves ***reckless <u>or</u> callous indifference*** to the plaintiff's federally protected rights, as well as when it is motivated by evil motive or intent. *Smith,* 461 U.S. 30, 56, 103 S. Ct. 1625, 1640, 75 L. Ed. 2d 632 (1983). Punitive damages are awarded in the jury's discretion "to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Id.* at 54.

Plaintiff has every authority to discuss punitive damages in both opening and closing arguments, as well as during *voir dire*. It would be wholly improper to prohibit Plaintiff from doing so as some members of the jury panel may be naturally inclined to decline the award of punitive damages due to their own personal beliefs, despite the Court's instruction on the issue. In order to avoid this prejudice, Plaintiff requires the opportunity to question jurors on the topic





of punitive damages to determine whether they will properly follow the Court's instruction regardless of any implicit biases they may possess. Defendants' motion *in limine* should be denied.

## II. WORD LIMIT CERTIFICATION

I certify this memorandum contains 6274 words, according to Microsoft's word count, in compliance with the Local Civil Rules.

RESPECTFULLY SUBMITTED this 11th day of March, 2024.

**COCHRAN DOUGLAS, PLLC**

By: /s/ Loren A. Cochran

Loren A. Cochran, WSBA #32773
loren@cochrandouglas.com
Nicholas B. Douglas, WSBA #49786
cole@cochrandouglas.com
Tiffany L. Wilke, WSBA #49874
tiffany@cochrandouglas.com





**CERTIFICATE OF SERVICE**

I, **Loren A. Cochran,** hereby declare under penalty of perjury under the laws of the State of Washington and the United States of America that I am an attorney at Cochran Douglas Law and that on today's date, I served the foregoing via **ECF and email**, by directing delivery to the following individuals:

Kymm Cox
Jennifer Taylor
CITY OF TACOMA ATTORNEY
747 Market Street, Room 1120
Tacoma, WA 98402
jtaylor@cityoftacoma.org
gcastro@cityoftacoma.org
bpittman@cityoftacoma.org
kcox@cityoftacoma.org

*Attorneys for Defendants City of Tacoma and Christopher Bain*

DATED this 11th day of March, 2024.

/s/ Loren A. Cochran
Loren A. Cochran



