THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ZIMMERI CONTRERAZ, individually,

　　　　　　　　Plaintiff,

　　vs.

CITY OF TACOMA, a municipal corporation, SOUTH SOUND 911, an interlocal agreement agency; and, CHRISTOPHER BAIN, in his individual capacity

　　　　　　　Defendants.

Case No. 3:22-cv-05106-JNW

PLAINTIFF'S TRIAL BRIEF

TRIAL DATE:  APRIL 8, 2024

## I.　INTRODUCTION

Plaintiff Zimmeri Contreraz, by and through his attorneys of record, respectfully submits this trial brief to address the factual, legal, and evidentiary issues presented by this case. As the Court knows after extensive briefing in prior motions, this case involves the unlawful targeting and labeling by the Tacoma Police Department as the suspect of an alleged felony crime solely because he was a Black man in a Tacoma park.  This fact was admitted by individual defendant Christopher Bain in his deposition. [1]

To make matters worse, after being unreasonably detained, handcuffed and surrounded by multiple TPD officer, Plaintiff Contreraz was then yanked back without provocation or

---

[1] Dkt. 105 - Declaration of Loren A. Cochran previously filed in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Cochran Decl.") at Ex 1, 88:25-89:6.



cause, by the handcuffs, causing Contreraz to jerk backwards and land on his head, neck and back on a picnic tabletop.[2] Bain's actions were a constitutionally violative excessive use of force long prohibited by the Fourth Amendment and applicable to local law enforcement via the Fourteenth Amendment.  Further, Bain's violent actions constitute an unlawful battery under Washington State law.  Further, the City is responsible for the actions of Bain and the other TPD officers with Bain whose only justification for detaining Contreraz in a public park was the color of his skin.  These race-based acts violate Washington's Laws Against Discrimination ("WLAD") as codified in RCW 49.60 et seqs. Plaintiff thanks the Court for its work on this matter and looks forward to a concise yet spirited presentation of the case.

## II.    FACTUAL BACKGROUND

### A.    July 12, 2020 Call and CAD Log

On July 12, 2020, at or around 8 PM, TPD allegedly received an emergency call reporting that a white man and a black man were traveling together and threatening people with weapons at the basketball courts in Wright Park in Tacoma.[3] According to the CAD reports of that evening, one suspect was allegedly a white male wearing a black shirt, blonde or brown hair, and carrying a small black gun.[4]  The other suspect was described as a black male, wearing a <u>gray</u> tank top, long <u>black</u> shorts and <u>carrying a knife</u>.[5] The white male, later described as having orange hair and wearing a black shirt, allegedly pulled a gun during an altercation over basketball.[6] In addition to wearing a gray tank top and long black shorts, the black male was also alleged to be "buff" and wearing a "do rag" according to the CAD.[7]  The incident allegedly took place at the park's basketball courts. At least eight TPD officers responded to the radio call and ultimately to the scene.

---

[2] Dkt. 111 - Declaration of Zimmeri Contreraz ("Contreraz Decl.") at ¶ 2.
[3] Dkt. 105 - Cochran Decl. at Exs. 2; 3.
[4] *Id*. - Cochran Decl. at Ex 3.
[5] *Id*.
[6] *Id*.
[7] *Id.*



COCHRAN DOUGLAS
Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

**B.      Plaintiff Goes to Wright Park**

Plaintiff Zimmeri Contreraz is a 38-year-old man of Black and Native American heritage who lives in Tacoma.[8] In July of 2020, Contreraz was employed as a car salesman at Tacoma Dodge Chrysler Jeep Ram.[9]  On July 12, 2020, a Sunday, Contreraz went to Wright Park, as he did most days after working out, to enjoy the evening outdoors.[10] He was sitting alone at a picnic table far from the park's basketball courts.[11] Contreraz was wearing a <u>black</u> tank top, <u>red</u> shorts, a <u>baseball cap,</u> and a facemask as required by the state's COVID epidemic guidelines.[12]



*Screen shot of Plaintiff Zimmeri Contreraz from Facebook Live Video - 000067 - 7/12/2020*

Two people, a white man and a white woman unaffiliated with Contreraz, were sitting nearby, seated together in a hammock only yards away.[13]  Contreraz had seen the white woman with her dog on other occasions at the park, and she had seen him previously at the park as well.[14]

---

[8] Dkt. 111 - Contreraz Decl. at ¶ 3.
[9] *Id*. at ¶ 4.
[10] *Id*. at ¶ 5.
[11] *Id*. at ¶ 6.
[12] *Id*. at ¶ 7.
[13] *Id*. at ¶ 8.
[14] *Id*. at ¶ 9.



At approximately 7:30 pm, Contreraz saw two police cars drive on the park's grass in front of him.[15]  The cars pulled off, but three to four minutes later, Contreraz heard someone behind him announce, "Put your arms behind your back."[16] At first, he didn't understand to whom the officers were speaking.[17]  He stood up from the picnic table, turned around and saw eight to nine officers approaching him, two with their guns drawn and pointed at him.[18] The officers repeated their command to, "Put your arms behind your back."[19]

Contreraz tried to put his cell phone in his pocket, but one of the officers (later identified as Christopher Bain) rushed up with his gun drawn and threatened Contreraz not to put his hands in his pocket or the officer would blow his head off.[20]  The group of officers encircled him.[21] Contreraz stood up and voluntarily placed his hands behind his back.[22]  Two or three officers grabbed Contreraz's arms and used two sets of handcuffs to secure him with his hands cuffed behind his back.[23]

The officers, still in a semicircle, shoulder-to-shoulder and surrounding Contreraz, then physically seated him on top of the metal picnic table with his feet still on the ground.[24] After first speaking over each other, one of the officers told Contreraz that he fit the description of a black man in the park with a gun and a knife assaulting people.[25]  Defendant Bain then got close to Contreraz, at one point pressing up against him, speaking louder and louder.[26]  Contreraz then heard another officer say, "Bain, you can't argue with an idiot."[27]

---

[15] *Id*. at ¶ 10.
[16] *Id*. at ¶ 11.
[17] *Id*. at ¶ 12.
[18] *Id*. at ¶ 13.
[19] *Id*. at ¶ 14.
[20] *Id*. at ¶ 15.
[21] *Id*. at ¶ 16.
[22] *Id*. at ¶ 17.
[23] *Id*. at ¶ 18.
[24] *Id*. at ¶ 19.
[25] *Id*. at ¶ 20.
[26] *Id*. at ¶ 21.
[27] *Id*. at ¶ 22.

PLAINTIFF'S TRIAL BRIEF



**COCHRAN DOUGLAS**
Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

Shortly after that point Defendant Bain was on Contreraz's right side.[28] Bain then appeared to walk away.[29]  While Contreraz was listening to the other officers in front of him, he felt his arms yanked back behind him by the handcuffs.[30] With witnesses Smith and Wade watching, Contreraz's body fell back, his feet touched the officer in front of him, and he hit the picnic table with his back, neck, and head.[31] Contreraz was completely parallel with the table.[32] He saw Bain standing now on his left side with his body turned and his left arm holding him down.[33]

After Contreraz was laid out on the picnic table, surrounding officers grabbed Bain and physically moved him away from the immediate area.[34]  Contreraz was unable to get back upright by himself and was assisted by other officers, while Bain continued to yell at him.[35] Eventually, Contreraz was uncuffed by other officers.[36]  One of the officers who uncuffed Contreraz told him to look on the bright side, that he fit the description of a big buff black guy, and it looked like he lifted weights, so he should be happy about that.[37]  The officer then walked off laughing.[38] Contreraz then asked the officers if they were going to search his bag for a gun or a knife.[39]  When they didn't respond, he poured his bag on the table to show them he had nothing.[40]  Contreraz's adrenaline was flowing, and he felt frustrated and upset at the encounter and at Bain's assaultive actions.[41]

---

[28] *Id*. at ¶ 23.
[29] *Id*. at ¶ 24.
[30] *Id*. at ¶ 25.
[31] *Id*. at ¶ 26; *see also*, Dkt. 108 - Declaration of Seth Smith.
[32] *Id*. at ¶ 27.
[33] *Id*. at ¶ 28.
[34] *Id*. at ¶ 29.
[35] *Id*. at ¶ 30.
[36] *Id*. at ¶ 31.
[37] *Id*. at ¶ 32.
[38] *Id*. at ¶ 33.
[39] *Id*. at ¶ 34.
[40] *Id*. at ¶ 35.
[41] *Id*. at ¶ 36.



COCHRAN
DOUGLAS
Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

After the other officers started walking toward their police vehicles, Bain approached again.[42]  He poked Contreraz in the forehead with his finger and said, "Mother fucker, I'm going to see you again and we are going to have a talk."[43] Other officers came back and pulled Bain away.[44] Another officer again said, "Bain, I told you, you can't argue with an idiot."[45]

That's when Contreraz asked for their names, badge numbers and for a supervising sergeant.[46] As an officer radioed for his sergeant, he pulled out his notepad and said, "What do you need our names and badge numbers for?  Are you going to file a lawsuit?"[47]  He and other officers laughed again at Contreraz.[48]

At or about that time, Contreraz began live streaming the event on Facebook Live.[49]

## C.      The Facebook Live Stream Corroborates Contreraz's Narrative

Facebook Live allows users to live stream video to their followers while simultaneously saving the recording to the user's account.[50]  Contreraz livestreamed two separate, back-to-back videos immediately following his encounter.[51]

      1.      <u>Facebook Live Video - 000067 - 7/12/2020</u>

In the first video, Contreraz, still in the heat of the moment and speaking with witnesses Seth Smith and Chrissie Wake, explains how things unfolded.

> **CONTRERAZ:** Man, I got off work two hours ago. I went to Stadium and fucking worked out on the football field, came to chill and relax and enjoy what evening I have left, and then I'm in fucking handcuffs with all these goddamn cops because I fit some description of someone with a gun and a knife fucking with people.[52]
>
> …

---

[42] *Id.* at ¶ 37.
[43] *Id.* at ¶ 38.
[44] *Id.* at ¶ 39.
[45] *Id.* at ¶ 40.
[46] *Id.* at ¶ 41.
[47] *Id.* at ¶ 42.
[48] *Id.* at ¶ 43.
[49] *Id.* at ¶ 44; ¶ 47.
[50] *Id.* at ¶ 48.
[51] *Id.* at ¶ 49.
[52] Dkt. 105 - Cochran Decl. at Ex. 4, 4:10-11.

PLAINTIFF'S TRIAL BRIEF



**COCHRAN DOUGLAS**
Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

**CONTRERAZ:** I don't know what they're up to. Getting a supervisor. They didn't give no explanation, just came over here and put in handcuffs.

**SETH SMITH:** You didn't resist or nothing either.

**CONTRERAZ:** No, I wasn't doing shit.

**SMITH:** -- way back on the fucking -- from the handcuffs and pulled you back.

**CONTRERAZ:** I saw -- and then this guy came and fucking yanked me.

**SMITH:** Yeah, that's what I –

**CHRISSIE WADE:** The little one.

**SMITH:** Fucking tough guy.

**CONTRERAZ:** He was the one that was standing there staring me down. He said, I want to fucking talk to you. I said I'll give you the address to my work. I'll give you the name of it.[53]

…

**SMITH:** There was no reason for him to pull you down like that. That was fucking --

**CONTRERAZ:** No, that's fucked.

**SMITH:** -- detained. You were cooperating.

**CONTRERAZ:** It is. They was just waiting for me to do something.

**SMITH:** Fucking tough guy.

**CONTRERAZ:** That guy that was standing there, the little one, he was standing there with his fucking hand on his gun. And I said, You're just waiting to kill somebody, aren't you? He said, Motherfucker, I want to talk to you.

**SMITH:** Real tough.[54]

…

**CONTRERAZ:** You're acting aggressive. Well, motherfucker, I'm chilling and minding my own business, and seven of you roll up on me and put me in handcuffs. And one guy is fucking yanking me on the --

**SMITH:** There's no fucking need for that. You didn't --

**CONTRERAZ:** -- on the goddamn picnic table.

**SMITH:** You didn't resist anything. Like, you did what they fucking told you to do.

**CONTRERAZ:** Then they walk away, and then he still stands there by himself staring me down.

---

[53] *Id.* at Ex. 4, 6:21-25, 7:1-14.
[54] *Id.* at Ex. 4, 8:6-21.

PLAINTIFF'S TRIAL BRIEF



COCHRAN DOUGLAS
Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

**WADE:** They need to babysit that guy.

**CONTRERAZ:** That guy should not be a fucking cop.[55]



*Image from Facebook stream of July 12, 2020.*

…

**SMITH:** What was he trying to act all tough about? Like --

**CONTRERAZ:** I don't know. He came and fucking yanked me, and then he fucking came and got in my face right there.

And then they all walked away and he still stood right here, like a foot from me, just staring me down.

He said, Motherfucker, I want to talk to you.

I said, Dude, you can have my Facebook, you can have my work address, you can come work out with me tomorrow night before I come here. I said, I'll be back here at the same time.

And he says, I'll be fucking back here too, then.

**WADE:** And then so will we.[56]

2.      Facebook Live Video - 000068 - 7/12/2020

In the second streamed video, TPD Sergeant Kevin Jepson appears.

---

[55] *Id.* at Ex. 4, 11:6-23.
[56] *Id.* at Ex. 4, 13:4-25, 14:1-2.

PLAINTIFF'S TRIAL BRIEF

COCHRAN DOUGLAS
Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

**SERGEANT JEPSON:** Okay. What can I do for you?

**CONTRERAZ:** So what exactly is going on? You guys tell me. Before they even asked any questions or asked for ID, nothing, I was already in motherfucking handcuffs, with the little Dane dude yanking me on the goddamn picnic table.

**SERGEANT JEPSON:** Okay.

**SMITH:** We saw that too. He's been here the whole time. We were over there in our hammock.

**SERGEANT JEPSON:** Right.

**SMITH:** And he was cooperative the entire time. He stood up, put his hands behind his back, and then another cop came behind and pulled him down on the table.

**SERGEANT JEPSON:** Okay.

**SMITH:** And I don't know. That just seems a little excessive for somebody that's cooperating.

**SERGEANT JEPSON:** Okay.

**SMITH:** Didn't even get told what was going on.

**SERGEANT JEPSON:** Okay.

**SMITH:** We sat there and watched the whole thing.[57]

…

**SMITH:** What about the guy that pulled a gun once he was in handcuffs? He was being cooperative the entire time. He didn't run, he didn't argue.

**SERGEANT JEPSON:** Right.

**SMITH:** He put his hand behind his back when they asked him. And he was sitting on the table. Another cop came from behind, grabbed his handcuffs and pulled him down.

**SERGEANT JEPSON:** I'll talk to him about that. I don't know why they would do that.

**SMITH:** Then he acted like a tough guy, and the other cops had to tell him to go.[58]

…

**SMITH:** The other cops were telling him to go, and he's standing there just staring him down, like, acting like a fucking bulldog.

---

[57] Dkt. 105 - Cochran Decl. at Ex. 5, 3:23-25, 4:1-25, 5:1-6.
[58] *Id.* at Ex. 5, 7:15-25, 8:15-25.

PLAINTIFF'S TRIAL BRIEF



2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

**SERGEANT JEPSON:** Okay. See, that's improper. And that, I will talk to him about.

**SMITH:** And I said -- I specifically saw him. He was sitting here like this and he came from behind and pulled his handcuffs to pull him down on the table. When he was cooperating, there's --

**SERGEANT JEPSON:** When he was already sitting?

**SMITH:** He was already sitting.

**CONTRERAZ:** I was already sitting.

**SMITH:** He had five cops around him.[59]

Eventually, Jepson offers to take a complaint.[60] Contreraz declines and informs Jepson that he will file his complaint online.[61] On August 27, 2020, Plaintiff Contreraz, using the exact instructions from TPD's webpage, emailed the following complaint to Internal Affairs.[62] To date, the City has never responded to Contreraz's complaint.[63]

Importantly, Contreraz was the <u>only</u> person, black or white or otherwise, detained or even questioned by TPD officers regarding this incident in which allegedly armed and dangerous individuals were feloniously harassing the alleged victim.[64] According to the CAD, officers made no additional efforts to locate the alleged suspects <u>after</u> Contreraz was contacted.[65] This fact was confirmed by the video streamed at the time of the incident. In the picture above, four (4) officers can be seen only yards away immediately after Bain's attack staring back at Contreraz for an extended period of time; again, in spite of the earlier emergency call and assailants at-large.

**D.    Defendant Bain's Accounts of the Assault Vary Significantly**

Bain's recollection changed significantly over the course of his November 14, 2023 deposition. He first remembered generally that the primary call involved intimidation with a

---

[59] *Id.* at Ex. 5, 11:1-25, 12:1-24.
[60] *Id.* at Ex. 5, 23:10-25.
[61] *Id.* Sgt. Jepson also stated that he would investigate what transpired, but that was never done. Cochran Decl. at Ex. 8, 25:8-25, 26:1-25, 27:1-23, 66:9-25, 67:1-18; 79:1-8.
[62] Dkt. 111 - Contreraz Decl. at ¶ 50.; *Id.* at Ex. H.
[63] *Id.* at ¶ 51.
[64] Dkt. 105 - Cochran Decl. at Ex. 3.
[65] *Id.*

**COCHRAN DOUGLAS**
Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

weapon around Tacoma General Hospital, and that the suspect ran toward Wright Park.[66] According to Bain's initial recollection, before he and training officer Erik Levitt got to the area, Bain learned that Officer Joel Cheney had already contacted someone.[67] Bain said he and Levitt went to back Cheney up because the person possibly had a weapon.[68] According to Bain, by the time they arrived, "…Cheney had already contacted the individual later identified as Mr. Contreraz."[69] Bain didn't recall being involved in the handcuffing of Contreraz.[70] Bain also first testified that Contreraz, "appeared to be highly impaired."[71]

Bain also testified at first that he couldn't remember what Contreraz was wearing because he thought Officer Cheney had already made contact.[72]

> So our job wasn't to search for anybody at the time. It wasn't to pay attention to the description. It was to get to where the officer was to back him up to make sure that he and everybody there was safe.

> So when I arrived on scene, I hadn't read the call or known what the description of the person was. My job there at the time was to back up Officer Cheney.[73]

Bain was provided a copy the July 12, 2020 CAD log during his deposition. Bain acknowledged that, "There's not a whole lot of information that I've testified to that's in this CAD call."[74] This included no mention of Contreraz, or anyone else, being intoxicated at the scene.[75]

Bain also acknowledged the CAD log's description of the second suspect was, "Black male, gray tank top, long black shorts."[76] Bain then reiterated that he and his partner Levitt couldn't find anyone that matched the CAD description.[77]

---

[66] Dkt 105 - Cochran Decl. at Ex. 1, 48:1-3.
[67] *Id.*
[68] *Id.* at Ex. 1, 48:7-8, 21-24.
[69] *Id.* at Ex. 1, 49:2-4.
[70] *Id.* at Ex. 1, 49:14-19).
[71] *Id.* at Ex. 1, 50:6-17.
[72] *Id.* at Ex. 1, 58:10-14.
[73] *Id.* at Ex. 1, 58:15-21; *see also*, *id.* at Ex. 1, 71:2-7, 72:25; 73:1.
[74] *Id.* at Ex. 1, 67:3-4.
[75] *See id.* at Ex. 3.; *Id* at Ex. 1, 84:1-12.
[76] *Id.* at Ex. 1, 70:8.
[77] *Id.* at Ex. 1, 70:10.

PLAINTIFF'S TRIAL BRIEF



COCHRAN
DOUGLAS
**Attorneys at Law**
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

According to the CAD, Contreraz was described through abbreviations as a "black male" wearing <u>red</u> shorts and a <u>black</u> tank top.[78] The CAD includes no other identifiers, including height, weight, facial hair, or anything else for Contreraz or for the alleged suspect.[79] The only thing matching the second suspect's description to that of the plaintiff within the CAD report is that he is a black male.[80] This fact was conceded by Defendant Bain during his deposition.[81]

Just prior to the deposition, the City produced, for the first time , a report allegedly written by Bain later in the evening of the incident with Contreraz.[82] Bain stated that he had not read the report, but just learned about it the night before while he was checking his email.[83] Bain's report states:

> Officer Cheney had contacted the victim and said that a B/M with a muscular build, who was wearing a do rag, black tank top, and dirty white shoes pulled a knife on him and a white male who had red hair was wearing a black T-shirt and black shorts pulled a gun on him at the basketball courts at Wright Park.[84]

Bain acknowledged that there was no mention of dirty white shoes in the CAD.[85]  Bain's report also indicates that, unlike his prior recollection, Bain and Levitt were the officers that located Contreraz, not Cheney.[86]

> At 2105 hours Officer LEVITT located a muscular build B/M who was wearing a black tank top, and a black hat and white shoes sitting at a picnic table on the east side of the park near the Observatory at S. 3rd and G street. We got out to contact the male and were joined by multiple other officers. Officer LEVITT assisted in placing the male, who refused to identify himself, into double handcuffs. The male immediately became argumentative and kept asking why he was put in handcuffs.
>
> …

---

[78] *Id.* at Ex. 3.
[79] *Id.*
[80] *See id.*
[81] *Id.* at Ex. 1, 88:25-89:6.
[82] *Id.* at Ex. 6.
[83] *Id.* at Ex. 1, 119:21-22.
[84] *Id.* at Ex. 6.
[85] *Id.* at Ex. 1, 113:22-25.
[86] *Id.* at Ex. 1, 118:1-23.



**COCHRAN DOUGLAS**
Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

> In between his rants he would blankly stare at me, then would start ranting again claiming that we were only detaining him because he was black. He was sitting on the edge of the table and started to stand up. Either Officer BRANHAM or Officer CHENEY told him to sit back down. He then took a step forward and started to lean in towards Officer BRANHAM. I reacted by grabbing his handcuffs and provided equal rear pressure to get him to sit back down on the table. The pressure worked and he sat back down. At no time did he make any complaints of pain from me grabbing the cuffs. He did not make any noise that would indicate he had been in pain.[87]

Absent from the report is any mention of Contreraz impaired or intoxicated, just that he was allegedly "belligerent".[88]

Training Officer Erik Levitt also created a report allegedly on the evening of July 12, 2020.[89]  Levitt's reports states that he approached with his weapon drawn.[90]  He also admits that Contreraz did not match the CAD description.

> The African American male was wearing a black tank top, red shorts, and dirty white tennis shoes. The male did not exactly match the description, but he was close enough to the description that I felt it was necessary for us to detain him and identify him.[91]

Levitt's recall of Bain's action is significantly different than Bain's.

> PPO BAIN was standing behind the male to his left at this time. PPO BAIN grabbed the male by his handcuffs, and pulled him back onto the picnic table. As the male's legs contacted the edge of the table, he fell backwards onto the end of the table in a seated position, leaned slightly backwards from the momentum and immediately sat back up.[92]

**E.      Plaintiff Sustained Injury as a Result of the Assault**

The morning following the assault, Contreraz woke up with his arms and hands tingling and numb, and he had an extensive headache.[93]  He went to Tacoma General Hospital to get medical aid for the physical harm caused by Officer Bain.[94]  He was assessed as suffering a

---

[87] *Id.* at Ex. 6.
[88] *Id.* at Ex. 1, 127:11-25, 128:1-4.
[89] *Id.* at Ex. 7.
[90] *Id.*
[91] *Id.*
[92] *Id.*
[93] Dkt. 111 - Contreraz Decl. at ¶ 45.
[94] *Id.* at ¶ 46.

PLAINTIFF'S TRIAL BRIEF



COCHRAN
DOUGLAS
Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

strain to his neck muscle, bilateral hand numbness, cervical strain and a concussion.[95] He has also been diagnosed with Post Traumatic Stress Disorder (PTSD) as a result of Bain's assault and TPD's actions.[96]

### III.   LEGAL AND EVIDENTIARY ISSUES

**A.    42 U.S.C.  § 1983: Violation of Fourth Amendment as to Christopher Bain's Excessive Force**

Excessive force in the context of an arrest or investigatory stop implicates the Fourth Amendment's right to be free from "unreasonable ... seizures." U.S. Const. amend. IV; *see Graham v. Connor*, 490 U.S. 386, 394 (1989). Courts analyze claims of excessive force under an "objective reasonableness" standard.  *Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010) (citing  *Graham,* 490 U.S. at 395). The controlling question is whether the officer's actions are objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation" and without the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396-97.

Because the reasonableness standard is not capable of precise definition or mechanical application, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. These factors "are not exclusive. Rather, [the court] examine[s] the totality of the circumstances and consider[s] 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'"  *Bryan*, 630 F.3d at 826 (citing  *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). Courts also consider the "'quantum of force' used to arrest the plaintiff, the availability of alternative methods of

---

[95] *Id.* at Exs. A; B; C; and D.
[96] *Id.* at Ex. E.



2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

capturing or detaining the suspect, and the plaintiff's mental and emotional state." *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010)

There are many factual discrepancies between witness accounts that require the jury to examine the testimony and other evidence, assess credibility, and ultimately render a verdict. Bain's testimony alone has morphed multiple times; from his statements to the City's paid police expert, to the first part of his deposition, to the point where he read the CAD log and finally to the point where he read the FIR he allegedly wrote the same night of the incident.

At first, Bain claimed that he simply arrived on scene after Officer Cheney had detained Contreraz. Then, Bain changed his story after reading his report to his identification of Contreraz based on "a dark tank top and dirty white shoes," descriptions that are nowhere to be found in the CAD report. Bain first claimed that Conteraz was "highly impaired" and "intoxicated," in spite of no mention of alcohol in the CAD or in his own FIR, and despite the fact that he is a trained DUI checkpoint investigator.

Plaintiff's Police Practices Expert, Susan Peters, states Bain's use of force, including the takedown on the picnic table was excessive.[97] Peters also found the Facebook livestreams and the video witness account given by Seth Smith to the City's investigators especially corroborative Bain's unconstitutional actions.[98]

**B.     Detention and Arrest of Contreraz Motivated by Race Violates the WLAD**

Zimmeri Contreraz has the right to be free from discrimination because of race, creed, color, or national origin, RCW 49.60.030. This civil right extends to the right to "the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodations, assemblage, or amusement," including public parks like Tacoma's Wright Park. RCW 49.60.030 (1)(b).

---

[97] Dkt. 106 - Declaration of Susan Peters.
[98] *Id*.

PLAINTIFF'S TRIAL BRIEF



COCHRAN
DOUGLAS
**Attorneys at Law**
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

Washington's Law Against Discrimination, ("WLAD"), prohibits "any person or the person's agent or employee from committing an act which directly or indirectly results in any distinction, restriction, or discrimination" based on "race, creed, color, national origin, citizenship or immigration status," as well as other protected classes.  RCW 49.60.215. The purpose of the statute is to deter and eradicate discrimination in Washington.  *Fraternal Order of Eagles, 29 Tenino Aerie 564 v. Grand Aerie of Fraternal Order of Eagles 225*, 148 Wn.2d 224, 246, 59 P. 3d 655 (2002). The statute must be construed "liberally for the accomplishment of the purposes thereof."  RCW 49.60.020;  *Martini v. Boeing Co.* 137 Wn.2d 357, 364, 971 (1999).

A plaintiff establishes a prima facie case of discrimination under the WLAD through proof that (1) the plaintiff is a member of a protected class; (2) the act occurred in a place of public accommodation; (3) the defendant discriminated against the plaintiff when by not treating the plaintiff in a manner comparable to the treatment it provides to persons outside that class; and (4) the plaintiff's protected status was a substantial factor causing the discrimination. *Floeting v. Group Health Cooperative*, 192 Wn.2d 848, 853-54, 434 P. 3d 99 (2019). *Floeting* provides the formula for prosecuting such violations in a strict liability platform. Strict liability, on the other hand, "does not depend on proof of negligence or intent to do harm." *Vargas v. Inland Washington, LLC*, 194 Wn.2d 720, 742, 452 P.3d 1205, 1217 (2019).

A plaintiff needs only to show that the plaintiff's protected trait, herein race and national origin, was a substantial factor motivating in the defendant's adverse actions toward the complainant.  *Scrivener v. Clark College.*, 181 Wn.2d 439, 445, 334 P. 3d 541 (2014);  *Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 310, 898 P. 2d 284 (1995). A substantial factor means that the protected characteristic or class was a significant motivating factor in bringing about a defendant's adverse action.  *Mackay* at 311.

Finally, proof of discrimination requires application of an objective standard: "We mean that it must be of a type, or to a degree, that a reasonable person who is a member of the

**COCHRAN DOUGLAS**
Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

Plaintiffs' protected class, under the same certain circumstances, would feel discriminated against…"., *Floeting, supra* at 858,  403 P 3d 559; *State v. Trey M*, 186 Wn. 2d 884, 383 P 3d 474 (2016).

Here, Defendant Bain has admitted that the *only* matching element on the CAD log was that Contreraz was a Black man. It's not enough for the City's officers to claim that Contreraz's clothing description was "close enough" to justify the violence he was subjected to by Bain and his fellow TPD officers. This is especially true when the CAD reported a bearded white male suspect carrying a gun; and yet, a bearded white male with a gun (a legal concealed carry) next to Contreraz was not even questioned.

**C.    Plaintiff's Negligence Claim is Not Barred**

"Claims of negligent law enforcement are not novel." *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 543, 442 P.3d 608, 611 (2019). Washington courts have long recognized the potential for tort liability based on the negligent performance of law enforcement activities. *See, e.g., Washburn v. City of Federal Way*, 178 Wn.2d 732, 310 P.3d 1275 (2013) (negligent service of a protective order); *Chambers-Castanes v. King County*, 100 Wn.2d 275, 669 P.2d 451 (1983) (negligent failure to respond with police assistance in a timely manner); *Mason v. Bitton*, 85 Wn.2d 321, 534 P.2d 1360 (1975) (negligent police vehicle chase); *Garnett v. City of Bellevue*, 59 Wn.App. 281, 796 P.2d 782 (1990) (negligent infliction of emotional distress for officers' harsh and offensive language in responding to a call that plaintiffs were loitering). Indeed, such liability is consistent with the broad waiver of sovereign immunity for municipalities under RCW 4.96.010.

In the case at hand, all the elements are met to establish the four essential elements for a negligence claim: duty, breach, proximate cause, and resulting harm. *Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166 (1984); *Hansen v. Friend*, 118 Wn.2d 476, 479, 824 P.2d 483 (1992); *Kennedy v. Sea-Land Serv., Inc.*, 62 Wn. App. 839, 856, 816 P.2d 75 (1991). The City here was negligent in causing foreseeable harm in the course of TPD's interactions with



Contreraz. In *Beltran-Serrano*, the Washington Supreme Court found that the "core" of plaintiff's negligence claim against the City "is that Officer Volk unreasonably failed to follow police practices calculated to avoid the use of deadly force." *Beltran-Serrano*, 193 Wn.2d at 544. Plaintiffs may pursue both an intentional tort, such as a battery claim, as well as negligence claims. *Id*. at 548. "Under Washington common law, the City owes a duty to refrain from causing foreseeable harm in the course of law enforcement interactions with individuals." *Id*. at 552.

Contreraz was injured because of TPD's failure to follow clearly established law with regard to investigative stops and reasonable suspicion; *de facto* arrests and the necessary probable cause; and, the acceptable use of force when an individual is compliant and cooperative during an investigation.

Thus, Defendant City, through the unlawful conduct of TPD officers, including Bain, created the dangerous circumstances in which Plaintiff was subjected to the unlawful use of excessive force. The City is liable for the negligent acts of its law enforcement officers by operation of *respondeat superior*, or vicarious liability. *Respondeat superior*, or vicarious liability, imposes liability on an employer for the torts of an employee who is acting on the employer's behalf within the scope of employment. *Niece v. Elmview Group Home*, 131 Wn.2d 39, 48, 929 P.2d 420. *Respondeat superior* is analytically distinct and separate from a cause of action for negligent hiring, retention, and supervision. *Id*. at 48. Defendant City was responsible for the actions of its agents and employees under the theory of *respondeat superior*.

Further, Defendant City, through its employees, including Bain and the officers who engaged Contreraz, owed a duty to use reasonable care with regard to their action. Defendant City, through its employees, including Bain and the officers who engaged Contreraz violated that duty by failing to have reasonable suspicion to detain him, failing to have probable cause to conduct a *de facto* arrest, and failing to have a justification for the level of force which resulted in Contreraz's injuries.



**COCHRAN DOUGLAS**
Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

**D.      Battery by Christopher Bain**

Washington recognizes the state tort of battery by a law enforcement officer in an excessive force case. *Staats v. Brown*, 139 Wn.2d 757, 780, 991 P.2d 615 (2000).  "Battery is an intentional tort; the tortfeasor must intend an offensive touching, and the plaintiff must show there was no consent to the touching."  *Bundrick v. Stewart*, 128 Wn. App. 11, 18, 114 P.3d 1204 (2005).

Here, Defendant Christopher Bain intentionally yanked Plaintiff Zimmeri Contreraz by the arms and handcuffs causing him to land on a picnic tabletop contacting his neck, back and head.   There is no dispute that Contreraz did not consent to jerked back so that we landed on the top of the table.

**E.      Damages**

Plaintiff Contreraz is seeking damages relating to his injuries, including but not limited to the on-going pain and suffering he has endured as a result of being targeted solely by being Black in a public park.   Plaintiff seeks punitive damages against Defendant Bain for his treatment of Contreraz.

Section 1983 was "intended to 'create a species of tort liability' in favor of persons deprived of federally secured rights."  *Smith v. Wade*, 461 U.S. 30, 34, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (quoting *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)).  Further, the common law of torts governs the recoverable damages for liability under § 1983.  *Id.*  Accordingly, when the Supreme Court determined the requisite mental state and conduct for a punitive damages award under § 1983, the Court looked to applicable tort law concepts.  See *id.* at 38, 103 S.Ct. 1625.

In *Smith v. Wade*, the Court considered whether punitive damages could be awarded only for intentionally malicious conduct or whether the district court properly instructed the jury that it could award punitive damages "if the conduct of one or more of the defendants is shown to be a reckless or callous disregard of, or indifference to, the rights or safety of others."



COCHRAN
DOUGLAS
Attorneys at Law
2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

*Id.* at 33, 103 S.Ct. 1625.  Focusing on the standards for punitive damages at the time of the enactment of § 1983, the Court concluded that federal and state courts agreed that punitive damage awards "did not require a showing of actual malicious intent; they permitted punitive awards on variously stated standards of *negligence, recklessness, or other culpable conduct* short of actual malicious intent."  *Id.* at 45, 103 S.Ct. 1625 (emphasis added).  "[W]e have frequently operated under the assumption that [a punitive damage] instruction is proper [in federal civil rights cases for oppressive conduct.]"  *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).

The facts presented in this case warrant the inclusion of a punitive damages jury instruction as a jury could find that Officer Bain's actions, including the detention and the excessive use of force, were entirely motivated by racial animus toward Contreraz.  The facts here easily meet the threshold level sufficient to instruct the jury on the issue of punitive damages.

## IV.   CONCLUSION

Plaintiff looks forward to presenting his case when it is set to commence on April 8, 2024.

## V.   WORD LIMIT CERTIFICATION

I certify that this memorandum contains 6,475 words according to Microsoft Word's Word Count function, in compliance with the Local Civil Rules.

DATED this 25th day of March, 2024

COCHRAN DOUGLAS, PLLC

By:   /s/ Loren A. Cochran
         Loren A. Cochran, WSBA No. 32773
         Nicholas B. "Cole" Douglas, WSBA No. 49786
         Tiffany L. Wilke, WSBA No. 49874
         Attorneys for Plaintiff



2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com

1

2

**CERTIFICATE OF SERVICE**

3      I, **Kim Snyder,** hereby declare under penalty of perjury under the laws of the State of

4  Washington and the United States of America that I am an attorney at Cochran Douglas Law

5  and that on today's date, I served the foregoing via **ECF a**nd **email**, by directing delivery to the

6  following individuals:

7
         Kymm Cox
8        Jennifer Taylor
         CITY OF TACOMA ATTORNEY
9        747 Market Street, Room 1120
         Tacoma, WA 98402
10       jtaylor@cityoftacoma.org
         gcastro@cityoftacoma.org
11       bpittman@cityoftacoma.org
         kcox@cityoftacoma.org
12

13       *Attorneys for Defendants City of Tacoma and Christopher Bain*

14

15      DATED this 25th day of March, 2024.

16                                                       /s/ Kim Snyder_____
                                                         Kim Snyder, Legal Assistant
17

18

19

20

21

22

23

24

25

26



2501 Fawcett Avenue
Tacoma, WA 98402
www.cochrandouglas.com